**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

Wade Waterman and
Dorothy S. Waterman,

     Plaintiffs,

     v.

United States of America,

     Defendant.

Case No. 2:12-cv-868

Judge Graham

Magistrate Judge Abel

**OPINION AND ORDER**

This case turns on whether Plaintiff Wade Waterman's partnership, Midwest Intermediaries, was a TEFRA partnership or a small partnership under the Internal Revenue Code for the tax years 1990 through 1992. In 1982, Congress passed the Tax Equity and Fiscal Responsibility Act, Pub. L. No. 97–248, 96 Stat. 324, to streamline the tax treatment of partnership income under the Internal Revenue Code. During the relevant time period, a TEFRA partnership was broadly defined as "any partnership required to file a return under section 6031(a)." 26 U.S.C. § 6231(a)(1)(A) (West 1992). The Code exempted small partnerships from this definition. See 26 U.S.C. § 6231(a)(1)(B)(i) (West 1992). During the relevant time period, the Code defined a small partnership as a partnership (1) with 10 or fewer partners and (2) in which each partner's share of each partnership item was the same as his share of every other item. 26 U.S.C. § 6231(a)(1)(B)(i)(I)-(II) (West 1992). Small partnerships were not, and are not, subject to the provisions of the Code governing TEFRA partnerships.

The Plaintiffs, Mr. Waterman and his wife, Dorothy, seek recovery of an alleged overpayment of taxes from 1990 through 1992. They filed their administrative claim for refund of this alleged overpayment on August 21, 2008. If Midwest Intermediaries was a small

partnership from 1990 through 1992, as the Defendant argues, the Plaintiffs' administrative claim was not timely filed and the Court lacks jurisdiction over the Plaintiffs' claim.[1] In contrast, if Midwest Intermediaries was a TEFRA partnership from 1990 through 1992, as the Plaintiffs assert, it appears that the Plaintiffs have a colorable argument that their administrative claim was timely filed and the Court may properly exercise jurisdiction over their claim. Because the Plaintiffs have not alleged sufficient facts to support a plausible inference that Midwest Intermediaries was a TEFRA partnership, the Court will grant the Defendant's Motion to Dismiss (doc. 11).

## I.     Background

The following facts are taken from the Plaintiffs' Complaint (doc. 1):

For an unspecified time, presumably in the 1980s and early 1990s, Plaintiff Wade Waterman operated a partnership, Midwest Intermediaries, with a business associate, Mr. Chamberlain.[2] Compl. at ¶ 6, doc. 1. In 1992, Mr. Waterman discovered that Mr. Chamberlain was embezzling partnership funds. Id. As a result of this embezzlement, the Plaintiffs reported income earned, but not received, from the partnership from 1990 through 1992. Id. at ¶ 14. This resulted in an alleged overpayment of $321,292.00 plus interest to the Defendant by the Plaintiffs. Id.

Over the next 15 years, Mr. Waterman sought to resolve his alleged overpayment of taxes with the Defendant. Id. at ¶ 7. In April 2008, the Defendant confirmed that Mr. Chamberlain had

---

[1] In its Reply, the Defendant introduces new facts that suggest the Court may exercise jurisdiction over a narrow portion of the Plaintiffs' claim even if Midwest Intermediaries was a small partnership. These facts are not part of the Plaintiffs' Complaint and the Plaintiff did not address them in their nominal Sur Reply. Therefore, the Court does not consider these new facts in ruling on the Defendant's Motion to Dismiss.

[2] The Plaintiffs do not provide the first name of Mr. Waterman's business partner. They refer to him as "Chamberlain" in their Response in Opposition. See Pls.' Resp. in Opp at 5–6, doc. 15.

not filed an individual tax return for the years 1990 through 1992. Id. In addition, no partnership return was submitted for those years. Id. at ¶ 13.  Based on this information and their consultation with tax professionals, the Plaintiffs submitted an amended return for those years on August 21, 2008. Id. at ¶ 7. On September 23, 2010, the Internal Revenue Service Appeals Office notified the Plaintiffs that their claims were denied as untimely filed. Id. at ¶ 20.

On September 9, 2012, the Plaintiffs filed a one count Complaint (doc. 1) against the Defendant. The sole count in the Complaint asserts that the Defendant violated 28 U.S.C. § 7433(a). The Plaintiffs allege that, through its officers or employees, the Defendant recklessly, intentionally, or negligently disregarded 26 U.S.C. § 6230, which governs partnership credits and refunds. The Defendant filed its Motion to Dismiss (doc. 11) on April 12, 2013.


## II.    Standard of Review

Federal Rule of Civil Procedure 8(a) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When considering a motion under Rule 12(b)(6) to dismiss a pleading for failure to state a claim, a court must determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A court should construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true. Iqbal, 556 U.S. at 679; Erickson v. Pardus, 551 U.S. 89, 93–94 (2007); Twombly, 550 U.S. at 555–56.

Despite this liberal pleading standard, the "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of

the elements of a cause of action, supported by mere conclusory statements, do not suffice."
Iqbal, 556 U.S. at 678; see also Twombly, 550 U.S. at 555, 557 ("labels and conclusions" or a
"formulaic recitation of the elements of a cause of action will not do," nor will "naked
assertion[s]" devoid of "further factual enhancements"); Papasan v. Allain, 478 U.S. 265, 286
(1986) (a court is "not bound to accept as true a legal conclusion couched as a factual
allegation"). The plaintiff must provide the grounds of his entitlement to relief "rather than a
blanket assertion of entitlement to relief." Twombly, 550 U.S. at 556 n.3. Thus, "a court
considering a motion to dismiss can choose to begin by identifying pleadings that, because they
are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679.

When the complaint does contain well-pleaded factual allegations, "a court should
assume their veracity and then determine whether they plausibly give rise to an entitlement to
relief." Iqbal, 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual
content that allows the court to draw the reasonable inference that the defendant is liable for the
misconduct alleged." Id. at 678. Though "[s]pecific facts are not necessary," Erickson, 551 U.S.
at 93, and though Rule 8 "does not impose a probability requirement at the pleading stage,"
Twombly, 550 U.S. at 556, the factual allegations must be enough to raise the claimed right to
relief above the speculative level and to create a reasonable expectation that discovery will reveal
evidence to support the claim. Iqbal, 556 U.S. at 678-79; Twombly, 550 U.S. at 555–56. This
inquiry as to plausibility is "a context-specific task that requires the reviewing court to draw on
its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the
court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has
not 'show[n]'– 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (quoting Fed. R.
Civ. P. 8(a)(2)).

### III.    Discussion

Citing 26 U.S.C. § 6231(a)(1)(B)(i),[3] the Defendant contends that Midwest Intermediaries was a small partnership, and that, therefore, the timeliness of the Plaintiffs' administrative claim is governed by 26 U.S.C. § 6511(a). Under § 6511(a), the Defendant argues, the Plaintiffs were obligated to file their administrative claim "within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires later." The Defendant argues that the Plaintiffs filed their administrative claim on August 21, 2008, well after the time period permitted in § 6511(a). As a result, the Defendant asserts, the Plaintiff has not satisfied the jurisdictional requirement for a suit for refund of federal income taxes.

The Plaintiffs, however, maintain that Midwest Intermediaries qualified as a TEFRA partnership, placing the Plaintiffs' claims outside the period of limitations imposed by § 6511. Instead, the Plaintiffs argue that 26 U.S.C. § 6229 and § 6230 control the timeliness of their administrative claims. The Plaintiffs explain that Sections 6229 and 6230 generally require that an administrative claim for refund of an overpayment related to a TEFRA partnership item be filed within three years of the date the partnership return was filed or the last date on which the partnership could have been filed for that tax year. However, the Plaintiffs emphasize that § 6229(c)(3), when read in conjunction with § 6230(d)(1), provides no period of limitations for filing an administrative claim for refund of an overpayment related to a TEFRA partnership.   In other words, the Plaintiffs argue that there was no period of limitations for filing their

---

[3] It is unclear whether the Defendant is referring to 26 U.S.C. § 6231(a)(1)(B)(i) (West 2013) or 26 U.S.C. § 6231(a)(1)(B)(i) (West 1992). As will be discussed later, there is an important difference between the two statutes.

administrative claim for refund and that therefore their August 2008 amended return was timely filed.

A.    *Period of Limitation*

"Timely filing of a refund claim [is] a jurisdictional prerequisite to bringing suit in a federal district court." <u>Comm'r v. Lundy</u>, 516 U.S. 235, 240 (1996). The Plaintiffs filed their amended return on August 21, 2008. Section 6511(a) is titled "Period of limitation on filing claim" and provides, in relevant part, that a "[c]laim for credit or refund of an overpayment of any tax imposed by this title . . . shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later[.]" 26 U.S.C. § 6511(a) (West 2008).[4] Failure to file an administrative claim for refund within the period of limitation prescribed by § 6511(a) will result in the denial of the taxpayer's claim. 26 U.S.C. § 6511(b) (West 2008).

The time limitations for administrative claims related to TEFRA partnerships are different than those prescribed by § 6511(a). <u>See</u> 26 U.S.C. § 6511(f) (West 2008) ("In the case of any tax imposed by subtitle A with respect to any person which is attributable to any partnership item (as defined in section 6231(a)(3)), the provisions of section 6227 and subsections (c) and (d) of section 6230 shall apply in lieu of the provisions of this subchapter.") Under TEFRA, a refund of an overpayment related to a partnership item "shall [not] be allowed or made to any partner after the expiration of the period of limitation prescribed in section 6229 with respect to such partner for assessment of any tax attributable to such item." 26 U.S.C. § 6230(d)(1) (West 2008).

---

[4] Section 6511(a) went into effect on June 17, 2008. The current version, 26 U.S.C. § 6511(a) (West 2014), is the same as the 2008 version.

As a general rule, the Government may assess any tax attributable to any partnership item within three years of "(1) the date on which the partnership return for such taxable year was filed, or (2) the last day for filing such return for such year (determined without regard to extensions)," whichever comes later. 26 U.S.C. § 6229(a)(1)-(2) (West 2008). In addition, § 6229 provides a special rule in cases where, as alleged here in the Complaint, no partnership return was filed. Under this rule, the Government may assess a tax attributable to a TEFRA partnership item "at any time" if no partnership return was ever filed. See 26 U.S.C. § 6229(c)(3) (West 2008) ("In the case of a failure by a partnership to file a return for any taxable year, any tax attributable to a partnership item (or affected item) arising in such year may be assessed at any time."). Therefore, an administrative claim for a refund of an overpayment related to a TEFRA partnership item is generally required to be filed within three years of "(1) the date on which the partnership return for such taxable year was filed, or (2) the last day for filing such return for such year," 26 U.S.C. § 6229(a)(1)-(2) (West 2008), but where no partnership return was ever filed, it appears that such a claim may be filed "at any time," 26 U.S.C. § 6229(c)(3) (West 2008).[5]

Here, it is undisputed that no partnership return was filed for Midwest Intermediaries from 1990 through 1992. If Midwest Intermediaries was a TEFRA partnership from 1990 through 1992, sections 6230(d)(1) and 6229(c)(3) suggest that the Plaintiffs could have filed their administrative claim for refund of an overpayment related to a TEFRA partnership item "at any time." Therefore, if Midwest Intermediaries was a TEFRA partnership, the Plaintiffs' administrative claim would appear to have been timely filed on August 21, 2008.

---

[5] Although this strikes the Court as a peculiar result, the plain language of § 6230(d)(1) and § 6229(c)(3) appears to compel it. TEFRA has been aptly described as a "statutory labyrinth," Prati v. United States, 81 Fed. Cl. 422, 427 (2008) and as "distressingly complex and confusing," Rhone-Poulenc Surfactants & Specialties LP v. Comm'r, 114 T.C. 533, 540 (2000).

However, if Midwest Intermediaries was a small partnership from 1990 through 1992, §
6511(a) provides that an administrative claim for refund of an overpayment must be filed within
three years of the return being filed or within two years from the time the tax was paid,
whichever period expires last. The Plaintiffs do not allege that their administrative claim was
filed within three years of their 1990 through 1992 returns being filed or within two years of
them having paid their taxes for those years. Therefore, if Midwest Intermediaries was a small
partnership, the Plaintiffs' administrative claim would not have been timely filed on August 21,
2008 based on the factual allegations set forth in their Complaint.

B.      *Small v. TEFRA Partnership*

To resolve the Defendant's Motion to Dismiss, the Court must determine whether
Midwest Intermediaries was a small partnership or TEFRA partnership under the Internal
Revenue Code (IRC) from 1990 through 1992, the years in which the Plaintiffs allegedly
overpaid taxes. In its Motion to Dismiss, the Defendant insists that Midwest Intermediaries was a
small partnership because it (1) had 10 or fewer partners and (2) did not file a notice of election
to be treated as a TEFRA partnership pursuant to 26 U.S.C. § 6231(a)(1)(B)(ii). Def.'s Mot. to
Dismiss at 1–5, doc. 11-1. In their Response, the Plaintiffs do not assert that they elected to be
treated as a TEFRA partnership under § 6231(a)(1)(B)(ii). Instead, they cite the Internal Revenue
Manual (the Manual) and argue that Midwest Intermediaries was a TEFRA partnership because
it did not satisfy the same share rule, an essential element of a small partnership under the
Manual. Pls.' Resp. in Opp. at 4–6, doc. 15.

From 1990 through 1992, as a general rule, a small partnership was a partnership (1) with
10 or fewer partners and (2) in which each partner's share of each partnership item was the same

as his share of every other partnership item. 26 U.S.C. § 6231(a)(1)(B)(i)(I)-(II) (West 1992).[6]

However, a small partnership under § 6231(a)(1)(B)(i) could elect to be treated as a TEFRA

partnership. 26 U.S.C. § 6231(a)(1)(B)(ii) (West 1992).[7]

In the present case, the Plaintiffs do not allege that Mr. Waterman filed an election

pursuant to § 6231(a)(1)(B)(ii). Instead, the Plaintiffs argue that the partners in Midwest

Intermediaries did not satisfy the same share rule, at the time, a necessary element of a small

partnership, and therefore Midwest Intermediaries was a TEFRA partnership for purposes of this

case. To support this argument, the Plaintiffs cite the Internal Revenue Manual's provision

concerning the Small Partnership Exception, § 8.19.1.6.3.1 (Dec. 1, 2006), as a basis for finding

that Midwest Intermediaries was a TEFRA partnership in this case.[8]

The Defendant correctly points out that the Internal Revenue Manual is not binding on

the Government. The Manual "is an internal IRS document issued to instruct personnel in

performing their duties, and thus, does not create any enforceable rights for taxpayers and does

not have the force or effect of law." Dudley's Commercial and Indus. Coating, Inc. v. United

States, 292 F. Supp. 2d 976, 987 (M.D. Tenn. 2003) (citing United States v. McKee, 192 F.3d

535, 540 (6th Cir. 1999); United States v. Barter Sys. of Grand Rapids, 557 F. Supp. 698 (W.D.

---

[6] The 1992 version of 26 U.S.C. § 6231(a) is identical to the 1990 and 1991 versions of the statute.

[7] Section 6231(a)(1)(B)(ii) was silent as to how a partnership could elect to be treated as a TEFRA partnership. In the absence of any statutory guidance, in 1987, the Department of Treasury and the Internal Revenue Service issued temporary regulations explaining the proper method of election. See 26 C.F.R. § 301.6231(a)(1)-1T(b)(2). The temporary regulations required that a partnership seeking an election under § 6231(a)(1)(B)(ii) attach a statement to the partnership return for the first taxable year for which the election is to be effective. Id. The statement must have been: (1) identified as an election under § 6231(a)(1)(B)(ii); (2) signed by all persons who were partners of that partnership during the partnership taxable year; and (3) filed at the time and place described for filing the partnership return. Id.

[8] Under the Internal Revenue Manual, the following were necessary elements of a small partnership: (1) "No more than ten partners at any time during the tax year;" (2) "each partner is a natural person; (3) "each partner's share of each partnership item is the same as his share of every other partnership item (same share rule);" and (4) the "partnership has not made an election to have the TEFRA rules apply." Internal Revenue Manual, § 8.19.1.6.3.1 (Dec. 1, 2006), doc. 15-1.

Mich. 1982)). See also Schweiker v. Hansen, 450 U.S. 785, 789 (1981) (per curiam) (holding that an agency policy manual "is not a regulation," "has no legal force," and "does not bind" the agency); Reisman v. Bullard, 14 F. App'x 377, 379 (6th Cir. 2001) (citing Valen Mfg. Co. v. United States, 90 F.3d 1190, 1194 (6th Cir. 1996)) ("Finally, the Reismans' argument that the IRS Handbook is binding authority is without merit. The provisions of the manual do not have the force and effect of law.") The Plaintiffs therefore cannot rely on the Internal Revenue Manual to establish that Midwest Intermediaries was a TEFRA partnership.

However, statutory and regulatory authority during the relevant time period[9] also required a partnership to satisfy the same share rule in order to qualify as a small partnership. See 26 U.S.C. § 6231(a)(1)(B)(i)(II) (West 1992) (defining the same share rule); 26 C.F.R. § 301.6231(a)(1)-1T(a)(3), 1987 WL 128728 (Mar. 5, 1987) (discussing the same share rule at length). To satisfy the same share rule, "each partner's share of each partnership item [must have been] the same as his share of every other item." 26 U.S.C. § 6231(a)(1)(B)(i)(II) (West 1992). For purposes of the same share rule, partnership items include: (1) items of income, gain, loss, deduction, or credit of the partnership; (2) expenditures by the partnership not deductible in computing its taxable income (for example, charitable contributions); (3) items of the partnership which may be tax preference items under section 57(a) for any partner; (4) income of the partnership exempt from tax, 26 C.F.R. § 301.6231(a)(3)–1(a)(1)(i) through (iv). 26 C.F.R. § 301.6231(a)(1)-1T(a)(3), 1987 WL 128728 (Mar. 5, 1987); McKnight v. Comm'r, 99 T.C. 180, (1992), affd 7 F.3d 447 (5th Cir. 1993).

Here, at the outset, the Plaintiffs acknowledges that Midwest Intermediaries satisfied the same share rule in the years prior to 1990—each partner had a 50% share in each partnership

---

[9] 1990 through 1992.

item. Pls.' Resp. in Opp. at 5. In 1990, the Plaintiffs assert that Mr. Chamberlain began to embezzle funds from Midwest Intermediaries. As a result, the Plaintiffs maintain that Mr. Waterman's share of "gain" was zero, in contrast to Mr. Chamberlain's gain of 100%, and thus Midwest Intermediaries did not satisfy the same share rule. See id. (Waterman's share of the "gain" was zero; Chamberlain's exceeded 100% by his non-proportional withdrawal of $1,837,750 in excess of the true profit income of $241,500 for Midwest in its 1990 fiscal year."). Further, the Plaintiffs submit Mr. Waterman's 1990 Schedule K-1 (doc. 15-2) and argue that Mr. Waterman's personal liabilities and equity position were drastically altered by Mr. Chamberlain's embezzlement. Id. at 6. Based on these changes in Mr. Waterman's share of gain, personal liability, and equity, the Plaintiffs implicitly argue that Midwest Intermediaries did not satisfy the same share rule.

The Court is not persuaded by these arguments and finds that the Plaintiffs have failed to allege facts demonstrating that the Midwest Intermediaries was a TEFRA partnership during the relevant time period. First, the Plaintiffs do not cite any factual allegations from their Complaint, and the Court has not been able to locate any such allegations, that support their claim that Midwest Intermediaries did not satisfy the same share rule. Instead, the Plaintiffs rely on assertions in their Response and exhibits attached thereto. In ruling on a Rule 12(b)(6) motion, the Court is limited to a consideration of the facts alleged in the Plaintiffs' Complaint. See Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"). The factual allegations made by the Plaintiffs—that Mr. Chamberlain's embezzlement negatively affected Mr. Waterman's share of gain, personal liability, and equity— are not contained in the Complaint and consequently the Court cannot consider them.

Second, even if the Court were to consider these factual allegations, the Court would still grant the Defendant's Motion to Dismiss. The Plaintiffs appear to argue that Midwest Intermediaries did not satisfy the same share rule because Mr. Waterman's share of gain changed from 50% prior to 1990 to 0% from 1990 through 1992. See Pls.' Resp. in Opp. at 5–6 ("Prior to transactions, Waterman's and Chamberlain's (partner) share of 'gain-loss' was 50/50%. Following the transactions, Waterman's share of the 'gain' was zero; Chamberlain's exceeded 100% by his non-proportional withdrawal of $1,837,750 in excess of the true profit income of $241,500 for Midwest in its 1990 fiscal year.") However, the fact that the partners' individual shares of gain changed during the course of the partnership does not mean that the same share rule was not satisfied. Under the same share rule, a partner's share of partnership items could change during the year without violating the rule provided that the change in share was the same for all partnership items. Harrell v. Comm'r, 91 T.C. 242, 245 (1988); see also Arthur B. Willis, et al, Partnership Taxation ¶ 20.02[2][b], 1999 WL 630409, at *4 (2014) ("A partner's share of all of the designated items could change during the year without violating the rule provided that the variation was the same for all of the designated items"). Moreover, the same share rule did not require that Mr. Waterman and Mr. Chamberlain have the same share of gain as each other. Rather, the rule required "each partner's share of each partnership item [to have been] the same as his share of every other item." 26 U.S.C. § 6231(a)(1)(B)(i)(II) (West 1992).

The Plaintiffs also appear to argue that Midwest Intermediaries did not satisfy the same share rule following Mr. Chamberlain's embezzlement because of its effect on Mr. Waterman's personal liabilities and equity position. However, a partner's personal liabilities and equity were not partnership items for purposes of the same share rule. See 26 C.F.R. § 301.6231(a)(3)–1(a)(1)(i) through (iv) (defining "partnership items" items as: (1) income, gain, loss, deduction,

or credit of the partnership; (2) expenditures by the partnership not deductible in computing its taxable income (for example, charitable contributions); (3) items of the partnership which may be tax preference items under section 57(a) for any partner; (4) income of the partnership exempt from tax.). A change in non-partnership items, such as a partner's personal liabilities and equity position, does not affect the determination of whether Midwest Intermediaries satisfied the same share rule.

Third, the Internal Revenue Code, 26 U.S.C. § 704(a) (West 1992), appears to set forth an objective standard for determining a partner's distributive share of partnership items. Section 704(a) provides that "[a] partner's distributive share of income, gain, loss, deduction, or credit shall, except as otherwise provided in this chapter, be determined by the partnership agreement." The parties do not dispute that Mr. Waterman and Mr. Chamberlain had agreed to split partnership items equally, with each partner receiving a 50% share of partnership items. During the relevant time period, Mr. Waterman was legally entitled to a 50% share of partnership items regardless of Mr. Chamberlain's embezzlement. Under § 704(a), the partnership agreement described by the Plaintiffs demonstrates that Midwest Intermediaries satisfied the same share rule and was therefore a small partnership subject to the § 6511(a)'s period of limitations during the relevant time period.

Fourth, in the alternative to § 704(a), in Harrell v. Comm'r, 91 T.C. 242 (1988) and Z-Tron Computer Program v. Comm'r, 91 T.C. 258 (1988), the United States Tax Court held that a partnership agreement is not determinative of whether a partnership satisfies the same share rule under § 6231(a)(1)(B). Instead, the Tax Court concluded that:

> for purposes of determining whether a partnership is a small partnership and whether the same share rule is satisfied, the test should be applied by determining whether the partnership reported more than one partnership item for the year and, if so, how those items were shared by each partner. This determination should be

made by respondent [the IRS] as of the date of commencement of the audit of the partnership (but not necessarily on that date) by examining the partnership return and the corresponding K-1s, and any amendments thereto received prior to this date.

Harrell, 91 T.C. at 246. See also Z-Tron Computer Program, 91 T.C. at 262. In other words, "[w]hether a partnership qualifies as a small partnership depends upon whether the partnership reported more than one partnership item for the year, and if so, how those items were shared by each partner," rather than "how items might have been shared under the terms of the partnership agreement." Z-Tron Computer Program, 91 T.C. at 263.[10]

Here, the Plaintiffs concede that no partnership return was filed for Midwest Intermediaries from 1990 through 1992. The Plaintiffs cannot allege that "the partnership reported more than one partnership item for the year" because no partnership return was ever filed for Midwest Intermediaries during the relevant time period. Cf. Harrell, 91 T.C. at 246 ("for purposes of determining whether a partnership is a small partnership and whether the same share rule is satisfied, the test should be applied by determining *whether the partnership reported more than one partnership item for the year* and, if so, how those items were shared by each partner" (emphasis added)). Further, from 1990 through 1992, the Plaintiffs allege that Mr. Chamberlain's embezzlement altered one partnership item, namely gain. In order to establish that the same share rule was not satisfied, a taxpayer must establish that a partner's share of two or more partnership items was unequal. Id.; Z-Tron Computer Program, 91 T.C. at 263. Nothing about Mr.

---

[10] Although the Tax Court's opinions are not binding on this Court, ABC Beverage Corp & Subsidiaries v. United States, 577 F. Supp. 2d 935, 946 (W.D. Mich. 2008), "uniform administration [is] promoted by conforming to them where possible," Dobson v. Comm'r, 320 U.S. 489, 502 (1943), and multiple courts of appeals have employed the reasoning set forth in Harrell and Z-Tron when determining whether the same share rule was satisfied under § 6231(a)(1)(B), see McKnight v. Comm'r, 7 F.3d 447, 453 (5th Cir. 1993) ("As the tax court pointed out in Harrell, . . . . what is needed to determine whether unified or separate audit procedures should be followed is a quick check of the face of the partnership tax return and the Schedules K-1"); Nehrlich v. Comm'r, 327 F. App'x 712, 713 (9th Cir. 2009) (quoting Harrell, 91 T.C. at 247) ("a partner or representative of a partnership is not permitted 'to claim a result other than that identified in the return and K–1s as filed and amended prior to the date of commencement of the partnership audit.'").

Chamberlain's embezzlement suggests that it altered Mr. Waterman's share of two or more partnership items.[11]

The Plaintiffs have not alleged sufficient facts demonstrating that Midwest Intermediaries was a TEFRA partnership. On the allegations before the Court now, Midwest Intermediaries was a small partnership and therefore subject to the period of limitations set forth in 26 U.S.C. § 6511(a) (West 2008). Because the Plaintiffs do not allege facts demonstrating that they filed their administrative claim within the period of limitation set forth in § 6511(a), the Court does not have jurisdiction over the Plaintiffs' Complaint and the Defendant's Motion to Dismiss will be granted.

## IV.  Conclusion

For the foregoing reasons, the Court GRANTS the Defendant's Motion to Dismiss (doc. 11).

IT IS SO ORDERED.

s/ James L. Graham
JAMES L. GRAHAM
United States District Judge

DATE: March 4, 2014

---

[11] It appears unlikely that the Plaintiffs can present the evidence necessary to support their claim that Midwest Intermediaries was a TEFRA partnership from 1990 to 1992. Harrell and Z-Tron hold that the IRS, or in this case, the Court, should only consider the partnership return and accompanying K-1 documentation in determining whether a partnership satisfied the same share requirement under § 6231(a)(1)(B), and that a partner is not permitted "to claim a result other than that identified in the return and K–1s as filed and amended prior to the date of commencement of the partnership audit," Harrell, 91 T.C. at 247. The Plaintiffs do not have a partnership return or partnership K-1 schedule to support their factual allegations. The only evidence that the Plaintiffs have presented to the Court is Mr. Waterman's 1990 Schedule K-1 (doc. 15-2), which states that Mr. Waterman's share of gain (profit), loss, and capital ownership was 50%. This supports the conclusion that Midwest Intermediaries satisfied the same share requirement for tax year 1990 and was a small partnership during the relevant time period.